J-A19019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DA NOLT, INC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORTH EAST SCHOOL DISTRICT | : | |
| | : | |
| | : | No. 1542 WDA 2024 |
| APPEAL OF: CM REGENT INSURANCE | : | |
| COMPANY | : | |

Appeal from the Order Entered November 8, 2024
In the Court of Common Pleas of Erie County Civil Division at No(s):
10829-2024

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.:          **FILED:  November 17, 2025**

Appellant, CM Regent Insurance Company ("Insurer") appeals from an order denying its motion for leave to intervene in a civil action between D.A. Nolt, Inc. ("Nolt") and North East School District ("NESD").  In this Court, NESD has filed an application to dismiss Insurer's appeal as moot due to an alleged settlement between NESD and Nolt, and Insurer has filed an answer contending that the alleged settlement is invalid.  We remand this case to the trial court to address these issues.  Panel jurisdiction retained.

Insurer provides insurance to school districts, colleges, and universities across Pennsylvania.  Insurer provides property insurance to NESD.[1]

---

[1] NESD's insurance policy with Insurer is not in the certified record.

NESD contracted with Nolt to repair and/or replace NESD's roof. In July 2022, NESD sustained two significant property damage losses that Nolt allegedly caused during the roof project. One incident involved water and/or tar damage, and the other involved fire/smoke damage. Following each incident, NESD submitted first-party insurance claims to Insurer. Insurer retained a building consultant to assess the scope of the property damage and repair costs.

Insurer retained the law firm of Crawford Slattery ("Crawford") to investigate whether any subrogation claims could be pursued against responsible third parties. According to Insurer, (1) Crawford specializes in handling property subrogation matters for insurance clients, and (2) Crawford charges significantly smaller contingent fees to Insurer than NESD's counsel charges NESD. Insurer wants Crawford to represent its subrogation interests in the litigation.

Insurer paid $1,139,532.81 to NESD on the first-party claims for damage to and cleaning of ceiling and carpet tiles.

In early 2024, NESD requested an additional payment of approximately $400,000.00 to replace additional ceiling and carpet tiles. This additional demand prompted a site inspection on April 1, 2024, in which Insurer and NESD reinspected the property and reviewed the scope of the damages. After this inspection, Insurer agreed to make an additional payment of $12,153.81

but declined to pay for other tiles that Insurer claimed fell outside the scope of coverage.

On April 10, 2024, Nolt filed a civil action against NESD seeking $129,572.15 for unpaid fees in the roof construction project. On May 31, 2024, NESD filed an answer with new matter and counterclaim for repairs and remediation of property damage, liquidated damages pursuant to the contract, increased insurance premiums, and attorneys' fees.

On July 2, 2024, Insurer sought to intervene in this case, citing its role as NESD's insurer and its interest in protecting its subrogation rights under the policy it issued to NESD. NESD opposed Insurer's motion to intervene on the ground that Insurer's interests were already adequately protected by the convergence of interests between NESD and Insurer and by the competence of NESD's counsel.

In an order docketed on November 12, 2024, the court denied Insurer leave to intervene on the ground that NESD's and Insurer's interests were adequately aligned such that NESD will adequately protect Insurer's interests as subrogee.

On December 12, 2024, Insurer appealed to this Court. On January 17, 2025, Insurer filed a concise statement of matters complained of on appeal claiming, in a series of issues, that its interests were not aligned with NESD and therefore NESD was entitled to intervene to protect its interests as subrogee.

On March 14, 2025, Insurer filed a brief in this Court raising the same issues that it raised in its concise statement. On the same date, NESD filed an application to quash Insurer's appeal on the ground that NESD and Nolt had entered a settlement agreement and mutual general release that, according to NESD, resolved all claims that then existed or may ever have existed. Application To Quash, 3/14/25, at ¶ 6. NESD alleged that the settlement agreement adequately protected Insurer's interests by including the following provision, "[NESD] agrees to settle and satisfy any all liens that may attached to its claim or recovery, including any subrogation lien asserted by [Insurer]." *Id.* at ¶ 13. NESD further alleged that it sent "a check" to Insurer pursuant to its agreement to protect Insurer's subrogation interests. *Id.* at ¶ 15. The application did not state the amount of the check. Nor did NESD attach the alleged settlement or check to the application to quash or include them in the certified record.

On March 24, 2025, Insurer filed an answer to NESD's application opposing quashal. Insurer contended that the settlement between NESD and Nolt is invalid under NESD's policy with Insurer because NESD entered the settlement without Insurer's knowledge or consent. Insurer's Opposition to NESD's Application to Quash Appeal, 3/24/25, at 1-2. Insurer did not attach its policy with NESD to its answer or include it in the certified record. Insurer also claimed that it entered a settlement agreement with Nolt on November 5, 2024, that Nolt has reneged upon, and the terms of this settlement should

be enforced.  *Id.* at 2.  Insurer did not attach its alleged agreement with Nolt

to its answer or include it in the certified record.

Finally, Insurer argued that the alleged settlement is invalid because

NESD's check to Insurer was insufficient to protect Insurer's subrogation

interests:

> [Insurer agreed to] [t]he November 5, 2024 settlement [with Nolt] with the understanding that [Insurer's] attorneys would be compensated via a contingency fee based upon the recovery. Instead, [in] the settlement that NESD claims to have reached [with Nolt], counsel for NESD took a $200,000.00 fee on the monies allocated to satisfying [Insurer's] subrogation lien. [Insurer] never consented to the fee being taken, nor does [Insurer] have a written contingency fee agreement with counsel for NESD.  See Pa. R. Prof. Cond. 1.5.  [Insurer] was neither contacted nor approved of the settlement and any fees being paid to NESD's counsel.  Furthermore, [Insurer] would never have agreed to the settlement terms if it had been made aware that its attorneys would not be receiving [their] attorney's fees. [Insurer] is now left in the unenviable position of having to compensate its attorneys after a fee was already taken out of its recovery.

*Id.* at 2-3.  Insurer did not attach the check to its answer or include it in the

certified record.

On March 28, 2025, Nolt filed an answer joining in NESD's application

to quash Insurer's appeal as moot.  Nolt argued, *inter alia,* that Insurer's

concise statement of matters complained of on appeal did not raise any issue

concerning the alleged settlement agreements between Nolt and NESD or

between Nolt and Insurer; instead, all issues in Insurer's concise statement

concerned its right to intervene to protect its interest as a subrogee.

Accordingly, Nolt states, the validity of either settlement agreement is not before this Court in this appeal.[2]

> As a general rule,
>
> an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*M.B.S. v. W.E.*, 232 A.3d 922, 927 (Pa. Super. 2020). Importantly, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so. We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Id.*

This Court is not the proper forum to address, in the first instance, the issues in NESD's application to quash and Insurer's answer to this application. On one hand, NESD's application raises the question whether this appeal is moot due to the alleged settlement between NESD and Nolt. On the other hand, Insurer's answer raises questions whether the alleged settlement is

---

[2] Nolt further argued that Insurer will not suffer any prejudice if its appeal is quashed, because "[t]o the extent [Insurer] contends that NESD improperly settled this case without its consent (in violation of the terms of NESD's insurance policy with [Insurer]), nothing is preventing [Insurer] from commencing a separate action against NESD." Nolt's Answer To Application To Quash, 3/28/25, at 3.

invalid because (1) NESD and Nolt entered into this agreement without Insurer's consent, (2) Insurer previously entered a settlement agreement with Nolt, and (3) the check from NESD to Insurer was insufficient to protect Insurer's subrogation interests. None of these issues have been litigated in the trial court or briefed in this Court. Furthermore, as discussed above, the documents relevant to these issues are not in the certified record.

We conclude that all of these issues deserve consideration by the trial court, and we remand for further proceedings in the trial court to address them. If necessary, the court shall conduct an evidentiary hearing(s). The trial court shall, as promptly as possible, conduct all necessary proceedings and enter a supplemental Pa.R.A.P. 1925(a) opinion resolving all issues.

Case remanded for further proceedings in accordance with this memorandum. Panel jurisdiction retained. This Court will direct further briefing, if necessary, after this Court's receipt of the trial court's supplemental Pa.R.A.P. 1925(a) opinion.